UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA


| KRISTYN M. GEORGE, | ) | |
|---|---|---|
| Plaintiff, | ) | 3:06-cv-00046 JWS |
| vs. | ) | ORDER AND OPINION |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) | [Re: Motions at Docket 20 and 23] |
| Defendant. | ) | |

## I. MOTIONS PRESENTED

At docket 20, plaintiff filed a brief on the merits, requesting remand for payment of benefits or alternatively remand for additional proceedings. Defendant Commissioner of Social Security filed his own motion to remand at docket 23. Both motions have been fully briefed. Oral argument was not requested and it would not assist the court.

## II. BACKGROUND

Plaintiff George filed a complaint in this court requesting review of the decision by the Commissioner of Social Security to deny plaintiff's claim for award of Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1383.[1] This court has jurisdiction under 42 U.S.C. § 405(g). Kristyn George is a forty-two-year-old

---

[1] Doc. at 1.

divorced mother of three. She is a high school graduate.[2] She was in special education classes from third grade until her graduation from high school.[3] She stated in her hearing that she reads at about a third grade reading level.[4] George filed for Supplemental Security Income payments in October 2002, claiming benefits beginning April 1, 2002.[5] George's application was denied on April 23, 2003.[6] George requested an administrative hearing, which was scheduled for September 2, 2004, in Portland, Oregon, although the hearing transcript dates the hearing as February 20, 2006.[7] The ALJ found that George was not disabled in a written opinion dated March 23, 2005, indicating to this court that the hearing was held in September 2004 as scheduled.[8]

George claimed that she is disabled due to a back injury and mental illness.[9] She has worked in the past as a janitor, housecleaner, inn/motel housekeeping staff, self-employed housecleaner, dishwasher, and alcove cleaner at the Alaska state fair.[10] She also worked at a convenience store, courier service, liquor stores, video store, pizza parlor, as a vegetable picker, and as night staff in a home for mentally handicapped schizophrenic adults within the last 15 years.[11]

At the hearing, George testified that she could not go back to work because she suffers from severe degenerative disk syndrome (complicated by her weight) as well as

---

[2]A.R. at 12, 411.

[3]A.R. at 411.

[4]A.R. at 411.

[5]A.R. at 12, 385.

[6]A.R. at 22-26.

[7]A.R. at 28, 35, 380.

[8]A.R. at 12-21.

[9]A.R. at 12, 22-23.

[10]A.R. at 387-91.

[11]A.R. at 387-95, A.R. at 96-99.

from panic attacks.[12]  George testified that her treating physician, Dr. Martin, told her that she should not even be doing housework due to her condition.[13]  George stated that she also has problems with her right shoulder that cause it to "pop out" and creates numbness in the arm.[14]  She testified that she also suffers from carpal tunnel syndrome in both hands, sometimes so severe she cannot even hold a plate in her hands.[15]  She has over-hyperextension in both her knees and has had three surgeries on her left knee.[16]  George also testified that doctors have told her to have surgery on her right knee.[17]  She has trouble sleeping due to her back problems.[18]  She testified that sometimes "it's really hard to get up and just even get up to go to the bathroom."[19]  Her back problems also create numbness in her arms and legs which stops her from doing household chores.[20]  George's panic attacks sometimes occur "two to three times a week."[21]  In addition to panic attacks, George states she suffers from depression which also affects her ability to work.[22]  She testified that she suffered from asthma which is

---

[12] A.R. at 395-96.

[13] A.R. at 397.

[14] A.R. at 399-400.

[15] A.R. at 401.

[16] A.R. at 404.

[17] A.R. at 404.

[18] A.R. at 408.

[19] A.R. at 395.

[20] A.R. at 407-08.

[21] A.R. at 396.

[22] A.R. at 409.

affected by cleaning products, glacial dust, and poor air quality.[23] George's panic attacks sometimes trigger an asthma attack.[24]

### III. STANDARD OF REVIEW

For purposes of the Social Security Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."[25] A person is not disabled if he or she is capable of engaging "in any . . . kind of substantial gainful work which exists in the national economy."[26]

"Disability claims are evaluated using a five-step sequential analysis."[27] At step one, the ALJ determines whether the claimant is currently working and the work is substantial gainful activity. If so, the claimant is not disabled.[28] At step two, the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments; that is, whether the impairment or combination of impairments significantly limits basic work activities. If not, the claimant is not disabled.[29] At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in an appendix to the regulations.[30] If so, the claimant is considered disabled regardless of age, education, or work experience.[31] At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and whether the

---

[23] A.R. at 406.

[24] A.R. at 406.

[25] 42 U.S.C. § 423(d)(1)(A).

[26] 42 U.S.C. § 423(d)(2).

[27] *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); 20 C.F.R. § 404-1520.

[28] 20 C.F.R. § 404.1520.

[29] 20 C.F.R. § 404.1520.

[30] 20 C.F.R. pt. 404, subpt. P, App. 1, 20 C.F.R. § 404.1520.

[31] 20 C.F.R. § 404 .1520.

claimant is capable of performing work he or she has performed in the past fifteen years. If so, the claimant is not disabled.[32] At step five, the ALJ determines whether the claimant is capable of performing any other work in the national economy. If so, the claimant is not disabled.[33] "The claimant carries the initial burden of proving a disability in steps one through four of the analysis."[34] If the claimant establishes the inability to perform past relevant work, the burden shifts to the ALJ to "identify other jobs that the claimant is capable of performing."[35]

Upon denial of disability benefits, a claimant may request the SSA Appeals Council to review the ALJ's decision.[36] Where, as here, the Appeals Council denies a request for review, the decision of the ALJ represents the final decision of the Commissioner.[37] The claimant may then seek judicial review of the ALJ's decision by the district court.[38] On *de novo* review, the district court may enter, upon the pleadings and a transcript of the record, a judgment affirming, modifying, or reversing the ALJ's decision, with or without remanding the case for a rehearing.[39] The ALJ's decision must be upheld if it is supported by substantial evidence and the ALJ applied the correct legal standards.[40] "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

---

[32] 20 C.F.R. § 404.1520.

[33] 20 C.F.R. § 404.1520.

[34] *Burch*, 400 F.3d at 679.

[35] Terry v. Sullivan, 903 F.2d 1273, 1275 (1990).

[36] 20 C.F.R. § 404.967.

[37] *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. § 404.981).

[38] 42 U.S.C. § 405(g).

[39] *Id.*

[40] *Howard v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 1997)).

adequate to support a conclusion.'"[41] When evidence supports either confirming or reversing the ALJ's decision, the reviewing court may not substitute its judgment for that of the ALJ.[42]

## IV. THE ADMINISTRATIVE LAW JUDGE'S OPINION

George maintains that Administrative Law Judge Linda Haack's ("ALJ") determination that she was not disabled was not supported by substantial evidence and contained errors of law.[43] The ALJ found that George satisfied the first two steps of the five-step test to determine disability.[44] The ALJ found that George had "major depression, recurrent, moderate, with a possible history of psychotic features, post traumatic stress disorder (PTSD), lumbar disc disease and right shoulder pain."[45] The ALJ found these impairments "severe" under the regulations but not enough so to medically meet or equal "either singly or in combination" any of the impairments of Appendix 1, Subpart P, Regulations No. 4.[46] The ALJ noted that she particularly looked to the listings in sections 1.00, 11.00, 12.04, and 12.06 of the Listing of Impairments.[47] The ALJ did not mention obesity as a consideration in her opinion.[48] The ALJ found that George had moderate limitations in social functioning, concentration, persistence or pace, however no repeated episodes of decompensation.[49]

The ALJ found that George does not retain the residual functional capacity to perform any of her past relevant work, based on a vocational expert's testimony, but

---

[41]*Id.* (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[42]*Batson*, 359 F.3d at 1196.

[43]A.R. at 21.

[44]A.R. at 20.

[45]A.R. at 13.

[46]A.R. at 13.

[47]A.R. at 13, 14.

[48]A.R. at 13, Doc. 28 at 5-6.

[49]A.R. at 14.

-6-

Case 3:06-cv-00046-JWS   Document 29   Filed 03/02/07   Page 6 of 18

found at Step 5 that George could perform other jobs existing in significant numbers in the national economy.[50] The ALJ found that George "can perform a full range of light work activity, with consideration for her low tolerance for stress and her moderate limitations in daily activities, in social functioning and in concentration, persistence, or pace."[51] The ALJ noted that the vocational expert testified that according to a hypothetical posed to the expert, George is capable of work as a polisher of eyeglass frames (sedentary, unskilled) or as an assembler of small components (sedentary, light).[52] The ALJ concluded that George was "not disabled."[53]

The ALJ noted that she found George's testimony less than fully credible because of some noncompliance with medications and "few objective findings to support the degree of pain" alleged.[54] The ALJ also noted that Dr. Martin, a treating physician, in limiting George to four hours a day of work activity did not "supply any objective medical findings which would support such significant limitations for 12 consecutive months or longer."[55] The judge questioned whether these limitations were temporary due to recovery of George's tailbone fracture and thus decided not to give Dr. Martin's opinion "great weight."[56]

## IV. DISCUSSION

The first issue raised by the plaintiff is whether the credibility and testimony of George and her treating physician were improperly discounted. The second issue is whether obesity was improperly discounted in the ALJ opinion. Next, George asks the court to hold that George satisfies or equals the criteria for disability as a matter of law,

---

[50] A.R. at 20.

[51] A.R. at 20.

[52] A.R. at 19.

[53] A.R. at 20.

[54] A.R. at 18.

[55] A.R. at 18.

[56] A.R. at 18.

based on Listing 20 C.F.R. Pt. 404, subpt. P, Appendix 1 Listings 1.02 and 1.04, Major dysfunction of a joint(s) and Disorders of the spine.

The defendant agrees with the plaintiff that obesity was not discussed as it should have been in steps 2-5 of the ALJ opinion, and argues that the case must therefore be remanded to the ALJ for further development of the record.[57] Plaintiff George replies that remand is not needed because the record " is ample to support a finding of disability at step three."[58]

As a preliminary matter, George asserts that under Local Rule 7.1(d), she is entitled to prevail, because the Commissioner failed to address the merits of her argument for disability as a matter of law at Step 3 when he responded by merely stating that the Step 3 findings were "in dispute" and that George's claims were "premature and possibly erroneous."[59] What the Commissioner is really saying is that at this stage it cannot be determined if plaintiff's contentions are wrong, because a more complete record is needed.[60] On the record here, the court finds that in taking such a position, the Commissioner has done all that was necessary to comply with the local rule.

### A. Credit of Treating Physician's Opinion

George asserts that there was not an adequate explanation for the disregard of Dr. Martin's opinion about George's functional limitations. A treating physician's opinion is "entitled to special weight."[61] "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."[62] If a treating doctor's opinion is contradicted by another

---

[57] Doc. 28 at 5-6.

[58] Doc. 27 at 3.

[59] Doc. 25 at 2 (citing Doc. 24 at 3, 6).

[60] Doc. 28 at 5-6.

[61] *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

[62] *Bayliss v. Barhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

-8-

Case 3:06-cv-00046-JWS    Document 29    Filed 03/02/07    Page 8 of 18

doctor's opinion, then an ALJ may reject the treating doctor's opinion only by "providing specific and legitimate reasons that are supported by substantial evidence."[63] The ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so."[64] "[R]easons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."[65]

The ALJ's reason for rejecting Dr. Martin's opinion is somewhat puzzling. The ALJ acknowledge that the treating physician's opinion was not given "great weight."[66] The ALJ found that the treating physician, "did not supply any objective medical findings" to support limiting George to four hours of work a day.[67] There are several places in the record where this limitation is stated. The ALJ might be addressing either Dr. Martin's 2002 Medical Examination and Capacity form for the State of Alaska completed on May 20, 2002, or his medical notes of the same day.[68] The ALJ also could be referencing testimony by George herself that "I was told that working four hours a day is pushing it" and that her doctor said "I'm writing four hours down reluctantly" because he "fe[lt] that [she] should be doing less" and that she shouldn't even be doing housework.[69] George stated that Dr. Martin tells her that "all the time when [she] go[es to] see him."[70]

---

[63]*Id.*

[64]*Reddik v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotations omitted).

[65]*Id.*

[66]A.R. at 18.

[67]A.R. at 18.

[68]A.R. at 123, 124.

[69]A.R. at 397.

[70]A.R. at 397.

-9-

Case 3:06-cv-00046-JWS   Document 29   Filed 03/02/07   Page 9 of 18

The medical form has four hours a day circled in answer to the question of whether the patient can work part time.[71] Similarly, medical notes of the same day state that the patient's back pains are exacerbated by her falls "a few months ago" and that she is "limited to 4 hrs work day per life quest."[72] The ALJ questioned this four-hour-a-day assessment by noting that perhaps Dr. Martin's assessment was based on a temporary limitation "during the recovery of [George's] tailbone fracture."[73] However, while the medical notes of May 20, 2002, do reference "falls a few months ago," the medical capacity form and notes make no mention of a fractured tailbone.[74] A tailbone fracture *did* occur *after* the 2002 assessment and before Dr. Martin's 2004 assessment, in December 2003 according to Dr. Martin's medical records.[75] This fracture occurred about a month before Dr. Martin again filled out a Medical Examination & Capacity form on January 19, 2004, where he stated that George could not work at all.[76] However, the ALJ offers no reason why on either capacity form Dr. Martin would have considered the tailbone fracture in assessing whether George had a medical condition that would affect her ability to work for "More than 12 Months" and "12" months, respectively.[77] Neither form appears to mention a tailbone fracture, and there is no reason to think that the doctor would consider a temporary limitation in stating an opinion on George's long term ability to work. The fact that Dr. Martin tells George "all the time" that she should be doing less than four hours of work a day supports the idea that Dr. Martin was not considering temporary limitations in that assessment.

---

[71]A.R. at 18; A.R. at 124.

[72]A.R. at 123.

[73]A.R. at 18.

[74]A.R. at 123, 124.

[75]A.R. at 360 (stating "fx tailbone the week of 12-17-03").

[76]A.R. at 363; See also A.R. at 360 (stating "fx tailbone the week of 12-17-03").

[77]A.R. at 124, 363.

The ALJ offered no "specific and legitimate reasons"[78] supported by substantial evidence for rejecting Dr. Martin's opinion. Claiming that Dr. Martin perhaps considered a temporary injury in his long-term disability assessment might be specific but is not a legitimate reason to reject Dr. Martin's opinion, and is not supported by substantial evidence.

The ALJ also states that Dr. Martin did not "supply any objective medical findings which would support such significant limitations" as a 4 hour work day for 12 months or longer.[79] However, Dr. Martin's records appears replete with documentation of George's condition that would explain Dr. Martin's expression of limitations. In April 2002, Dr. Martin noted that George had "porbable (*sic*) deg disc and jt disease."[80] In October 2002, Dr. Martin noted that George's MRI showed disc extrusion on L4-5 and a radial tear at L5-S1, and treated George with an epidural steroid injection for a "ruptured L4-5 disc".[81] In November 2002, Dr. Martin noted that George had "chronic pain syndrome, depression, and insomnia.[82] In 2004, Dr. Martin notes degenerative disk disease, degenerative joint disease, obesity, and lumbago as his diagnosis of George on the State capacity form.[83] A 2004 MRI similarly indicates "moderate degenerative change."[84] There is not substantial evidence to support the ALJ's opinion that there are not any objective medical findings to support Dr. Martin's 2002 limitation of four hours of work a day on George. Dr. Martin's opinion should therefore be fully credited.

---

[78] *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

[79] A.R. at 18.

[80] A.R. at 126.

[81] A.R. at 116.

[82] A.R. at 113.

[83] A.R. at 363.

[84] A.R. at 226.

-11-

**B. George's Credibility**

The ALJ also held that the claimant was less than fully credible, stating that the medical documents show "some noncompliance" with medication and that there were "few objective findings to support the degree of pain she alleges."[85] She said that "the objective medical evidence in the record does not support the claimant's allegations of debilitating pain."[86] If a claimant produces, "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," then an ALJ may reject testimony of the claimant on severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so."[87] The "fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."[88] "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."[89] In determining credibility, the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."[90]

Here, George has presented objective medical evidence that she suffers from an underlying impairment that reasonably could be expected to produce the pain and symptoms she alleges. George's medical records contain MRIs, the most recent of which shows "moderate degenerative change" at the L5-S1 disc.[91] Dr. Martin first notes

---

[85] A.R. at 18.

[86] A.R. at 17.

[87] *Smolen v. Chater*, 80 F.3d 1273, 1281-82, 1283-84 (9th Cir. 1996) (internal quotations omitted).

[88] *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

[89] *Smolen, 80 F.3d at 1284 (*internal quotations omitted).

[90] *Id.*

[91] A.R. at 226. Earlier MRIs and test results show "disc extrusion" and "very minimal lumbar dextroscoliosis." A.R. at 128, 132.

probable degenerative disc and joint disease on April 23, 2002.[92] On October 29, 2002, he notes that George had a ruptured L4-5 disc.[93] Dr. Martin and George's physician, Dr. Kirkpatrick, appeared to coordinate in prescribing extensive pain medications for George and nothing in the record indicates either doctor doubts George's pain.[94] Dr. Berselli examined George on April 22, 2004, and found that "[i]n all probability, [George's] pain generator in the lumbar spine area is either the L4-5 and/or the L5-S1 degenerated disks.[95] Dr. Berselli notes that "extensive physical therapy" has not helped, and recommended weight loss and possible surgery to relieve her pain.[96] Dr. Martin diagnoses degenerative disk disease, degenerative joint disease, obesity, and lumbago on his 2004 medical capacity form.[97] A diagnosis of mild AC joint arthritis was made regarding George's right shoulder,[98] and possible carpel tunnel syndrome was noted by Dr. Kirkpatrick.[99] George has shown sufficient objective medical evidence that she suffers from underlying impairments that reasonably could be expected to produce the pain and symptoms she alleges.

The ALJ notes George's noncompliance with medications as another reason to find her less than fully credible. "Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" can be a factor in determining whether a claimant's testimony is credible regarding the severity of her symptoms.[100] Here, however, the ALJ does not consider that there were explanations for George's

---

[92] A.R. at 126.

[93] A.R. at 116.

[94] A.R. 120-123, 116, 136.

[95] A.R. at 230.

[96] A.R. at 230.

[97] A.R. at 363.

[98] A.R. at 131.

[99] A.R. at 139.

[100] *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (internal quotations omitted).

-13-

occasional noncompliance. The instances of noncompliance with medications for psychological problems was usually explained by George to medical staff. For instance, George stated in January 2003 in therapy that she had stopped her medications because of problems with nausea and feeling ill.[101] Her doctor noted that she told him she stopped her Zoloft and Remeron medications because they caused "too much sedation," and she had been gaining some weight.[102] Another time, George informed Dr. Stallman she was unable to afford her medication.[103] She occasionally forgot to take medication as well or once stopped one medication due to sedation but continued another, indicating a willingness to stay on medication.[104] Dr. Stallman prescribed a different medication after George stated she had stopped Zoloft and Remeron because of too much sedation and weight gain.[105] The ALJ cites to the May 1, 2003 evaluation[106] that stated that George had stopped her Zoloft and not yet started her Lexapro, but on May 29 the therapist noted that "I would recommend we go ahead and allow her to continue on Lexarpro" as she might improve further "since she has been on it a relatively short period of time."[107] Thus, it is clear that George had started her Lexapro by the end of that month. George's occasional noncompliance was not "unexplained or inadequately explained," and the ALJ's reasons for rejecting George's credibility regarding her pain testimony were not clear and convincing reasons.

George's testimony regarding her symptoms and pain should have been fully credited by the ALJ. Her testimony should have been considered by the ALJ, and will need to be considered on remand.

---

[101] A.R. at 153.

[102] A.R. at 152.

[103] A.R. at 182.

[104] A.R. at 191, 193.

[105] A.R. at 152.

[106] A.R. at 14-15.

[107] A.R. 267.

Case 3:06-cv-00046-JWS   Document 29   Filed 03/02/07   Page 14 of 18

**C. Obesity**

Both defendant and George agree that the ALJ did not properly consider George's obesity in the residual functional capacity analysis at steps 4 and 5 or at the impairment analysis of step 2.[108] The record includes ample evidence about George's obesity and the exacerbating effects it has on her back impairment. Dr. Berselli's letter of April 22, 2004, states that George weighed 262 pounds and was five feet four inches, and noted that she is 120 pounds over her ideal weight.[109] Dr. Berselli indicates that losing weight might improve George's back pain.[110] Obesity is mentioned at the hearing[111] and in the ALJ's opinion.[112] It is mentioned by Dr. Martin in his medical examination and capacity form as a diagnosis.[113] Dr. Martin also makes note in his records of the need to "deal with weight loss and exercise."[114] Obesity was still not considered by the ALJ in any analysis of George's impairments at step 3 or her residual functional capacity. At the hearing, obesity was not considered in the RFC hypothetical given to the vocational expert.[115]

Obesity is particularly important to musculoskeletal system impairments. Section Q of Part 404, Subpt. P, App. 1, Section 1 states that:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each

---

[108] Doc. 28 at 5, Doc. 20 at 29. The ALJ did discuss obesity at the hearing, and mentions it in her opinion (A.R. 17, 395).

[109] A.R. 229-30.

[110] A.R. at 230.

[111] A.R. at 396.

[112] A.R. at 17 (noting that George's doctor has suggested that she lose weight and that she has done so, although she is "shocked" at contemplating a gastric bypass).

[113] A.R. at 363.

[114] A.R. at 366.

[115] A.R. at 415-17.

of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.[116]

The Ninth Circuit has stated that because "obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if there is an impairment that, in combination with obesity, meets the requirements of a listing."[117] Obesity should also be considered in the residual functional capacity assessment.[118] In *Celaya v. Halter*, the Ninth Circuit found that where the report of symptoms "implicitly" raised obesity as a disabling factor, where it was clear from the record that obesity was at least close to listing criterion of the time, and where the claimant was pro se, the ALJ's observation of claimant and the record "should have alerted him to the need to develop the record in respect to [claimant's] obesity."[119] The Ninth Circuit later pointed out that while the *Celaya* court noted that even if a claimant is represented, the ALJ still has some burden to develop the record, "this Court did not specify the parameters of that burden."[120]

Here, the ALJ did not consider obesity at *any* of the steps of the five-step analysis, although there is ample evidence in the record of George's obesity and how it exacerbates her other impairments. There is also clear evidence that the ALJ was aware of George's obesity. The ALJ herself questioned George at the hearing about

---

[116] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 1.00 Q.

[117] *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (internal quotations omitted); Social Security Ruling SSR 02-1p, Titles II and XVI: Evaluation of Obesity, Sept. 12, 2002, 67 F.R. 57859, 57862.

[118] Social Security Ruling SSR 02-1p, Titles II and XVI: Evaluation of Obesity, Sept. 12, 2002, 67 F.R. 57859, 57862-63.

[119] *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).

[120] *Burch*, 400 F.3d at 682.

-16-

her obesity[121] and even noted it in her summary of evidence in her opinion.[122] Although George might not have raised obesity in her Disability Report,[123] her obesity and its related effects on her other impairments is clearly documented. Its serious effects on her other impairments were clearly documented to the ALJ from the record and testimony, and should have been considered by the ALJ in a determination of whether George's combination of impairments met or equal a listed impairment and in the residual functional capacity assessment.[124]

### D. Remand

George argues that remand for further development of the record is unnecessary because she already satisfies the criteria for disability based on Listing 1.02 and 1.04 of 20 C.F.R. Pt. 404, subpt. P, Appendix 1. After carefully considering the record, the court disagrees. What is needed in this case is a thorough review by the ALJ after taking into account George's testimony, properly weighing the evidence from Dr. Martin, and considering the significance of George's obesity. Until that is done, the court is not confident that a particular outcome at Step 3 can be correctly ascertained by a reviewing court. Of course, if after properly considering all of the evidence, the ALJ still finds that George does not have the equivalent of a listed impairment at Step 3, the ALJ must go on and complete Steps 4 and 5. In that regard, it must be added that any hypothetical which is posed to a vocational expert in proceedings on remand must reflect all of George's impairments, including her obesity and any limitations properly supported by the evidence from Dr. Martin.

---

[121] A.R. at 396.

[122] A.R. at 16, 17.

[123] A.R. at 63.

[124] Social Security Ruling SSR 02-1p, Titles II and XVI: Evaluation of Obesity, Sept. 12, 2002, 67 F.R. 57859, 57860, 57867.

## VI. CONCLUSION

For the reasons above, the motion at docket 20 is **GRANTED in part and DENIED in part,** and the motion at docket 23 is **GRANTED** as follows: the Commissioner's decision is **REVERSED AND REMANDED** for further proceedings consistent with this opinion.

DATED at Anchorage, Alaska, this 2nd day of March 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE